# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

| | |
|---|---|
| STEPHANIE MARTIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | CASE NO. 0:24-cv-61340-AHS<br><br><br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION UNDER 9 U.S.C. §§ 3, 4 AND INCORPORATED MEMORANDUM OF LAW** |

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| INTRODUCTION | | 1 |
| BACKGROUND | | 2 |
| I. | The Arbitration Agreement | 2 |
| II. | Plaintiff's Arbitrable Claims | 5 |
| ARGUMENT | | 6 |
| I. | Legal Standard | 6 |
| II. | The Court Should Compel Arbitration | 7 |
| A. | The Parties Entered into a Valid and Enforceable Arbitration Agreement Controlled by the FAA | 7 |
| B. | The Disputed Claims are Subject to Arbitration | 11 |
| CONCLUSION | | 14 |
| CERTIFICATE OF CONFERRAL | | 14 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Airbnb, Inc. v. Doe*,
  336 So. 3d 698 (Fla. 2022) ...................................................................................................7, 10, 11

*Allied Van Lines, Inc. v. Bratton*,
  351 So. 2d 344 (Fla. 1977) ...............................................................................................................8

*Amat v. Rey Pizza Corp.*,
  204 F. Supp. 3d 1359 (S.D. Fla. 2016) ............................................................................................8

*Attix v. Carrington Mortgatges, Services, LLC*,
  35 F. 4th 1284 (11th Cir. 2022) .....................................................................................................12

*Barnett v. Fitness Int'l, LLC*,
  No. 20-60658, 2020 U.S. Dist. LEXIS 143906 (S.D. Fla. Aug. 10, 2020) ...............................13

*Bell v. Royal Seas Cruises, Inc.*,
  No. 19-60752, 2020 WL 5639947 (S.D. Fla. Sept. 21, 2020) ....................................................10

*Bender v. A.G. Edwards & Sons, Inc.*,
  971 F.2d 698 (11th Cir. 1992) ........................................................................................................6

*Calderon v. Sixt Rent a Car, LLC*,
  No. 19-62408-CIV, 2021 WL 1325868 (S.D. Fla. Apr. 9, 2021) .................................................6

*Caley v. Gulfstream Aerospace Corp.*,
  428 F.3d 1359 (11th Cir.2005) .......................................................................................................8

*Cordas v. Uber Technologies, Inc.*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017) ...........................................................................................7

*Dasher v. RBC Bank (USA)*,
  745 F.3d 1111 (11th Cir. 2014) ......................................................................................................6

*Doe v. Princess Cruise Lines, Ltd.*,
  657 F.3d 1204 (11th Cir. 2011) ....................................................................................................13

*Donado v. MRC Express, Inc.*,
  No. 17-24032-Civ-Scola, 2018 U.S. Dist. LEXIS 1513 (S.D. Fla. Jan. 4, 2018) .......................7

*Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*,
  251 F.3d 1316 (11th Cir. 2001) ..................................................................................................6, 8

*Fridman v. 1-800 Contacts, Inc.*,
    554 F. Supp. 3d 1252 (S.D. Fla. 2021) ..................................................................................9, 10

*Garcia v. Kendall Lakes Auto., LLC*,
    No. 18-24397-CIV, 2019 WL 1359475 (S.D. Fla. Mar. 26, 2019) ...........................................7

*Jacobs v. Chadbourne*,
    733 F. App'x 483 (11th Cir. 2018) ...........................................................................................8

*James v. Global TelLink Corp.*,
    852 F.3d 262 (3d Cir. 2017)....................................................................................................10

*Jones v. Waffle House, Inc.*,
    866 F.3d 1257 (11th Cir. 2017) ..............................................................................................12

*Joyce v. Forest River, Inc.*,
    No. 23-CV-81262, 2024 WL 517990 (S.D. Fla. Feb. 9, 2024) .................................................8

*Laine v. JetSmarter, Inc.*,
    No. 18-CV-62969, 2019 WL 1900339 (S.D. Fla. Apr. 29, 2019) .......................................7,10

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 2008) ................................................................................................7

*Massage Envy Franchising LLC v. Doe*,
    339 So. 3d 481 (Fla. 5th DCA 2022).....................................................................................9,10

*Mazile v. Larkin Univ. Corp.*,
    No. 1:23-CV-23306, 2024 WL 3495320 (S.D. Fla. July 22, 2024)..........................................9

*MetroPCS Communications, Inc. v. Porter*,
    273 So. 3d1025 (Fla. 3d DCA 2018) ..................................................................................9, 10

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017).................................................................................................10, 11

*Montero v. Carnival Corp.*,
    523 F. App'x 623 (11th Cir. 2013) .........................................................................................13

*Moore v. A-Team Trappers, L.L.C.*,
    No. 23-CV-60441-RAR, 2023 WL 4846598 (S.D. Fla. July 28, 2023) ...................................7

*Qutby v. Nadga*,
    817 So. 2d 952 (Fla. 5th DCA 2002).......................................................................................8

*Perry v. Thomas*,
    482 U.S. 483 (1987).................................................................................................................6

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................................................... 7

*Segal v. Amazon.com, Inc.*,
    763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ............................................................... 10

*Temple v. Best Rate Holdings LLC*,
    360 F. Supp. 3d 1289 (M.D. Fla. 2018) ........................................................................ 10

*Vitacost.Com, Inc. v. McCants*,
    210 So. 3d 761 (Fla. 4th DCA 2017) ........................................................................ 9, 10

*Zamber v. Am. Airlines, Inc.*,
    No. 16-23901-CV, 2020 WL 1445479 (S.D. Fla. Feb. 11, 2020) .................................... 9

**Statutes**

9 U.S.C. § 1 *et seq.* ............................................................................................................ 5, 6

9 U.S.C. § 2 ............................................................................................................................ 6

Fla. Stat. § 501.204 ................................................................................................................ 6

**Other Authorities**

Local Rule 7.1(a)(3) ............................................................................................................. 14

Pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, Defendant Uber Technologies, Inc. ("Uber"), respectfully moves the Court for entry of an order compelling arbitration and staying this action pending completion of arbitration in the above-captioned matter.

## INTRODUCTION

Plaintiff Stephanie Martin ("Plaintiff") filed this lawsuit, claiming that Uber improperly charged her sales tax on delivery fees for orders placed using Uber's platform. But a cursory review of the facts shows that Plaintiff agreed – and is required – to arbitrate any claims against Uber, including the claims she asserts in this action. Filing this lawsuit violated this agreement. As such, this action cannot proceed in the current forum and must be stayed while Plaintiff is compelled to engage in arbitration pursuant to the parties' agreement.

Plaintiff expressly agreed to Uber's June 14, 2023 Terms of Use ("Terms") on October 8, 2023, when she clicked a checkbox affirming that she accepted the Terms. The Terms required Plaintiff to resolve any claim that she may have against Uber on an individual basis in arbitration and gave the arbitrator the exclusive authority to determine threshold questions of arbitrability. The Terms included a clear and conspicuous arbitration provision mandating that disputes will be settled by binding arbitration, and that Uber and Plaintiff were each waiving the right to a trial by jury. Further, the parties agreed that the FAA would govern both the interpretation and the enforcement of dispute resolution procedures. Pursuant to controlling law, this agreement must be enforced.

Uber anticipates that Plaintiff may argue she did not consent to arbitration, but that argument has no merit. By clicking the checkbox, she affirmatively accepted the Terms and entered into a "Clickwrap" agreement with Uber. Federal and state courts in Florida have routinely upheld

"Clickwrap" agreements as binding agreements mandating arbitration when an arbitration provision is included. And in fact, Uber's arbitration agreements have been enforced over 100 times by competent courts throughout the country.[1] The same result should be reached in this matter.

For these reasons, and as detailed below, this Court should grant Uber's motion, compel individual arbitration of Plaintiff's claims, and stay this action pending completion of arbitration.

## BACKGROUND

### I. The Arbitration Agreement

Uber is a technology company that uses its proprietary technology to develop and maintain digital multi-sided marketplace platforms. *See* Exhibit 2, Declaration of Allison Gordon in Support of Defendant Uber Technologies, Inc.'s Motion to Compel Arbitration ("Gordon Decl."), ¶ 3. Some specific examples of platforms that Uber has developed include the Rides platform (connecting riders with independent drivers) and the Eats platform (connecting eaters with restaurants, grocery stores, and delivery persons). *See id.* ¶¶ 3-4.

Plaintiff alleges that, on or about May 30, 2024 and June 5, 2024, she used the Uber App to place food orders from Uber's Eats platform. *See* Class Action Complaint ("Complaint" or "Compl."), ¶ 17. Prior to placing the food orders, Plaintiff installed the Uber App[2] and during the sign-up process, she was presented with an in-app blocking pop-up screen—meaning a screen that a user could not proceed past unless he or she took specific action. Gordon Decl., ¶¶ 4, 9. The pop-up screen stated: "Check the box to indicate you are at least 18 years of age, agree to the Terms of Use and acknowledge the Privacy Notice." *Id.* ¶ 9. The phrases "Terms of Use" and "Privacy

---

[1] Attached hereto as Exhibit 1 is a collection of cases enforcing arbitration agreements identical to the one at-issue in this matter.
[2] Defined *infra*, p. 4.

2

Notice" were displayed underlined, in bright blue text, and hyperlinked. *Id.* If a user clicked either hyperlink, the "Terms of Use" or "Privacy Notice," respectively, were displayed. *Id.* ¶ 9; Ex. B. The following is a true and accurate representation of the in-app blocking pop-up screen Plaintiff would have observed when electing whether to accept the Terms and acknowledge the Privacy Notice:



*Id.* ¶¶ 9-10; Ex. B.

As shown above, the pop-up screen has a button with an arrow in the bottom right corner. A user cannot proceed past this screen and access the Uber App unless the user checks the box agreeing to the Terms and then taps the arrow at the bottom of the screen. *Id.* ¶ 10. Uber maintains records indicating whether, and if so when, users such as Plaintiff clicked the checkbox and then tapped the arrow. Plaintiff checked the box on this screen on October 8, 2023. *Id.* ¶ 10; Ex. C.

On October 8, 2023, Plaintiff expressly agreed to the Terms when she affirmatively checked the box to indicate, *inter alia*, that she reviewed and agreed to the Terms and the Privacy Notice (both available via hyperlink as depicted above). *Id.* ¶¶ 9-10; Ex. A (Terms). These Terms governed her use of Uber's personalized, multipurpose, digital marketplace platform ("Uber Marketplace Platform") and any related content or services, including mobile and/or web-based applications ("Applications" or the "Uber App," and together with the Uber Marketplace Platform, the "Services").

The Terms required Plaintiff to arbitrate her claims on an individual basis. *Id.* The section within the Terms entitled "Agreement to Binding Arbitration Between You and Uber" states:

> (1) Covered Disputes: Except as expressly provided below in Section 2(b), you and Uber agree that **any dispute, claim, or controversy in any way arising out of or relating to** (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) **your access to or use of the Services at any time**; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to the Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, **will be settled by binding individual arbitration between you and Uber, and not in a court of law.** This Arbitration Agreement survives after your relationship with Uber ends.

4

*Id*., Ex. A (Terms), § 2(a)(1) (emphasis added).

The Arbitration Agreement within the Terms identifies the FAA as the basis for interpretation of the agreement, stating in relevant part:

> [T]his Arbitration Agreement evidences a transaction involving interstate commerce and that the **Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto**. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and **that the FAA** and the applicable arbitration provider's rules **shall preempt all state laws to the fullest extent permitted by law.**

*Id.*, § 2(c) (emphasis added).

Plaintiff also agreed to delegate to the arbitrator the threshold questions of whether her claims are subject to arbitration, explicitly agreeing that:

> Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable.

*Id.*, § 2(a)(4).

**II.**   **Plaintiff's Arbitrable Claims**

Plaintiff alleges in her Complaint that Uber has unlawfully charged taxes on optional delivery charges to consumers throughout the state of Florida. *See* Compl. ¶ 20. Plaintiff alleges that Uber has a "practice of charging sales tax on delivery fees [that] is unlawful," or "so reckless or wanting in care," and that Uber "has collected from its customers, and will continue to collect, thousands of dollars in sales taxes on separately stated and avoidable delivery fees." *See id.* ¶¶ 22–24. Plaintiff further claims that some of the taxes collected by Uber have not yet been paid to the state of Florida, and that Uber remains in possession and control of the collected taxes. *See id.* ¶ 25. Based on those allegations, Plaintiff asserts three causes of action against Uber, namely, (1)

5

"Negligence," *id*. ¶¶ 36–45; (2) "Declaratory and Injunctive Relief," *id*. ¶¶ 46–56; and (3) "Violation of § 501.204, Fla. Stat.," or the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), *id.* ¶¶ 57– 61. Plaintiff purports to seek relief individually and on behalf of a class consisting of:

> All persons in Florida who, during the four years prior to the filing of this lawsuit, was [sic] charged by Defendant and paid sales tax on a delivery fee that was separately stated on an invoice or receipt when the person had the option to pick up the order at one of Defendant's locations in Florida.

*Id*. ¶ 26.

## ARGUMENT

### I. Legal Standard

"The Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq.*, governs the enforceability of an arbitration agreement." *Calderon v. Sixt Rent a Car, LLC*, No. 19-62408-CIV, 2021 WL 1325868, at *4 (S.D. Fla. Apr. 9, 2021) (citation omitted). "An arbitration agreement is generally 'valid, irrevocable, and enforceable.'" *Id.* (citing 9 U.S.C. § 2). "The FAA 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014)). Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration . . . [i]f the parties do not proceed to arbitration, the court may compel arbitration."). While federal law establishes the enforceability of arbitration agreements, state law governs the interpretation and formation of such agreements. *See Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483 (1987)).

Under the FAA, a court must compel arbitration if: (1) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles, and (2) the disputed claims are subject to arbitration. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008); *see also Moore v. A-Team Trappers, L.L.C.*, No. 23-CV-60441-RAR, 2023 WL 4846598, at *1 (S.D. Fla. July 28, 2023); *Donado v. MRC Express, Inc.*, No. 17-24032-Civ-Scola, 2018 U.S. Dist. LEXIS 1513, at *2 (S.D. Fla. Jan. 4, 2018) (same). In enforcing an Uber arbitration agreement, one court explained: "[t]he FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017).

"The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Garcia v. Kendall Lakes Auto., LLC*, No. 18-24397-CIV, 2019 WL 1359475, at *2 (S.D. Fla. Mar. 26, 2019) (citation omitted). "Accordingly, in ruling on a motion to compel arbitration, the Court may consider matters outside of the four corners of the complaint." *Id.* (citation omitted).

**II.   The Court Should Compel Arbitration**

    **A. The Parties Entered into a Valid and Enforceable Arbitration Agreement Controlled by the FAA**

Pursuant to the FAA, "arbitration is a creature of contract" and "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)); *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 703–05 (Fla. 2022).

The first question the Court must address is whether the parties entered into a valid and enforceable arbitration agreement. This determination is made based upon state law standards for

7

the entry into contracts. *Emps. Ins. of Wausau*, 251 F.3d at 1322. Because Plaintiff entered into a contract with Uber; all activities associated with Plaintiff's claims – both individually and with respect to the putative class – are alleged to have occurred in Florida; this matter was filed in Florida; and the Terms provide that the law of the state in which the dispute arises shall govern without regard to conflicts of law principles, Florida law governs this matter. *See* Compl. ¶¶ 1-11; Gordon Decl., Ex. A (Terms), § 8; *see also Amat v. Rey Pizza Corp.*, 204 F. Supp. 3d 1359, 1363 (S.D. Fla. 2016) ("In determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts . . . [h]ere, Florida state law contract principles govern the enforceability of this arbitration agreement.") (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir.2005)) (internal quotations omitted).

Plaintiff is also bound by the contract to which she entered. Florida's Fifth District Court of Appeal has opined:

> It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it.

*Qutby v. Nadga*, 817 So. 2d 952, 958 (Fla. 5th DCA 2002) (quoting *Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347–48 (Fla. 1977), which states, "[a] consumer of 'ordinary mind' has an obligation to 'read what he signs'"); *see Jacobs v. Chadbourne*, 733 F. App'x 483, 485 (11th Cir. 2018) ("Even though [appellant] was not required by law to read the contract . . . under Florida law he is still charged with knowledge of the contract's contents . . . [p]ut simply, Florida law assumes that a party to a contract knows the terms of the contract but does not require that a party read it.") (alteration in original) (citations omitted); *see Joyce v. Forest River, Inc.*, No. 23-CV-

8

81262, 2024 WL 517990, at *3 (S.D. Fla. Feb. 9, 2024) ("[U]nder both Florida and Indiana law, ignorance of the contents of a contract due to failure to read a contract is not a defense against a contract's enforcement.") (citations omitted). These core principles apply equally to arbitration agreements entered online. *See MetroPCS Communications, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018) ("After a great deal of debate, both courts and legal commentators have concluded that well-settled legal principles of contract formation suffice to decide cases, such as this one, involving contracts entered into and evidenced by electronic means.") (citations omitted).

Agreements appearing on internet webpages are often referred to as "clickwrap", "browsewrap" or "hybrid" agreements. *See Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021) ("Florida courts have recognized two main types of internet contracts: (1) clickwrap agreements: 'when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions[;]' and (2) browsewrap agreements: 'when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process.'"); *see Zamber v. Am. Airlines, Inc.*, No. 16-23901-CV, 2020 WL 1445479, at *3 (S.D. Fla. Feb. 11, 2020) (noting that "numerous authorities supplied by Defendant establishing that so-called 'clickwrap' agreements or hybrid clickwrap-browsewrap agreements are both routine and enforceable") (citations omitted); *MetroPCS Commc'ns, Inc.*, 273 So. 3d at 1028; *Vitacost.Com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017). Clickwrap agreements are routinely upheld as "valid and enforceable contracts." *See, e.g.*, *Mazile v. Larkin Univ. Corp.*, No. 1:23-CV-23306, 2024 WL 3495320, at *3 (S.D. Fla. July 22, 2024) (noting that "clickwrap agreements are generally upheld in Florida") (citations omitted); *Massage Envy Franchising LLC v. Doe*, 339 So. 3d 481, 484 (Fla. 5th DCA 2022) (same); *Vitacost.Com, Inc.*, 210 So. 3d at 762

9

(same); *see also, e.g.*, *Airbnb, Inc.*, 336 So. 3d 698, 703–05. A clickwrap agreement, like the agreement at issue, generally requires a webpage user to *actively* consent to terms or conditions, such as by clicking "accept" or checking a dialog box before proceeding with an internet transaction. *See Fridman*, 554 F. Supp. 3d at 1259*; Massage Envy Franchising LLC*, 339 So. 3d at 484; *Vitacost.Com,Inc.*, 210 So. 3d at 762; *accord Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *James v. Global TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017).

On the other hand, browsewrap agreements—which merely provide links to the terms and conditions on the website but do not require the purchaser to click an acknowledgement of those terms during checkout—are only upheld if "the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice' of the terms and conditions, such that continued use of the service constitutes assent to the terms and conditions." *Bell v. Royal Seas Cruises, Inc.*, No. 19-60752, 2020 WL 5639947, at *5 (S.D. Fla. Sept. 21, 2020) (citing *MetroPCS Commc'ns, Inc.*, 273 So. 3d at 1028–29). The same "reasonably prudent person" standard that applies to pure browsewrap agreements applies to a "hybrid" agreement, but the notice is entitled even more weight in favor of validity. *See Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1303 (M.D. Fla. 2018).

Plaintiff entered into a clickwrap agreement with Uber. Plaintiff checked the box agreeing to Uber's Terms. Gordon Decl. ¶ 10. The undisputed fact that the agreement was a clickwrap one makes the agreement – and its arbitration provision – valid under Florida law. *See Massage Envy Franchising LLC,* 339 So. 3d at 484; *see also Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits ... clickwrap agreements are valid and enforceable contracts.") (citations omitted); *see Laine v. JetSmarter, Inc.*, No. 18-CV-62969, 2019 WL 1900339, at *2, *4 (S.D. Fla. Apr. 29, 2019) (same).

Furthermore, the Terms were, in any event, conspicuous enough to put a reasonably prudent person on notice even under the hybrid or browsewrap standard. In a separate case involving a prior version of Uber's Terms of Use, which did not even require the explicit assent by checkbox, the United States Court of Appeals for the Second Circuit found both that (1) "the Uber App provided reasonably conspicuous notice of the Terms of Service," and (2) the registration process "unambiguously manifested [the plaintiff's] assent to Uber's Terms of Service." *Meyer*, 868 F.3d at 77–80, 83; *see also Airbnb, Inc.*, 336 So. 3d at 705 (Fla. 2022) (holding that the plaintiff's acceptance of Airbnb's terms of service in a clickwrap agreement that incorporated the AAA rules was clear and unmistakable evidence of the parties' intent to empower the arbitrator to resolve the question of arbitrability). The same conclusion is even more readily apparent based on the format and checkbox requirement that was presented to Plaintiff in this case. Plaintiff was presented with conspicuous notice of the Terms, and Plaintiff manifested clear assent to Uber's Terms.

Based on the foregoing, Uber's Terms constitute a clickwrap agreement, and its Terms were, in any event, conspicuous enough to put a reasonably prudent person on notice. Hence, Plaintiff is bound by the arbitration provision contained in the Terms.

**B.    The Disputed Claims are Subject to Arbitration**

**1.** *The Arbitration Agreement Expressly Delegates Arbitrability Determinations to an Arbitrator*

The Terms to which Plaintiff agreed contain a broad arbitration provision that requires the arbitrator, not the Court, to determine if a claim is arbitrable.

> Only an arbitrator, and not any federal, state, or local court or agency, **shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement**, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. **An arbitrator shall also**

11

>    **have exclusive authority to resolve all threshold arbitrability issues**, including issues relating to whether the Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel.

Gordon Decl., Ex. A, § 2(a)(4) (emphasis added). It is well-established that "[i]f the court finds that the parties have clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator, it must respect the parties' decision as embodied in the contract." *Attix v. Carrington Mortgages, Services, LLC*, 35 F. 4th 1284, 1296 (11th Cir. 2022); *e.g.*, *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017) ("The provision requires arbitration of 'any dispute' relating to gateway issues, and as we have said, '[a]ny disputes means all disputes, because any means all.'"). In this case, there is no dispute that the parties clearly and explicitly agreed that the arbitrator has " exclusive authority to resolve all threshold arbitrability issues." Gordon Decl., Ex. A, § 2(a)(4). As a result, any dispute over arbitrability must be decided in arbitration.

### 2. *Plaintiff's Claims are within the Scope of the Broad, Unambiguous, and Conspicuous Arbitration Agreement*

Moreover, the Terms are broad in scope and require the arbitration of any dispute between Plaintiff and Uber. The relevant language of the arbitration provision in Uber's Terms is titled "Agreement to Binding Arbitration Between You and Uber" and states:

>    (1) Covered Disputes: Except as expressly provided below in Section 2(b), you and Uber agree that **any dispute, claim, or controversy in any way arising out of or relating to** (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) **your access to or use of the Services** at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to the Terms, and regardless whether you allege that the personal injury was

> experienced by you or anyone else; and (iv) your relationship with Uber, **will be settled by binding individual arbitration between you and Uber, and not in a court of law.** This Arbitration Agreement survives after your relationship with Uber ends.

Gordon Decl., Ex. A, § 2(a)(1) (emphasis added). *See Montero v. Carnival Corp.*, 523 F. App'x 623, 626 (11th Cir. 2013) (affirming motion to compel arbitration and stating "[t]he arbitration clause in the . . . agreement does not expressly state whether it survives the termination of that agreement, but the unambiguous language clearly contemplates that it does. It broadly provides that 'any and all disputes' . . . 'shall be referred to and finally resolved by arbitration . . . . '"); *cf. Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) ("If the cruise line had wanted a broader arbitration provision, it should have left the scope of it at 'any and all disputes, claims, or controversies whatsoever' instead of including the limitation that narrowed the scope . . . .").

Plaintiff brought the instant lawsuit alleging that Uber has unlawfully charged taxes on optional delivery charges to consumers throughout the state of Florida. *See* Compl. ¶ 20. These claims go to the heart of the arbitration agreement as they are claims arising from Plaintiff's "access to or use of the Services." Gordon Decl., Ex. A, § 2(a)(1) (stating "you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to . . . (ii) your access to or use of the Services at any time"). Given that Plaintiff agreed to arbitrate any such disputes with Uber, Plaintiff's claims brought here must be arbitrated. *Barnett v. Fitness Int'l, LLC*, No. 20-60658, 2020 U.S. Dist. LEXIS 143906, at *16-17 (S.D. Fla. Aug. 10, 2020) (use of the phrase "any dispute" is "broad language" that evinces the parties' clear intent to arbitrate).

Accordingly, Uber's Motion should be granted because a valid arbitration agreement exists that encompasses the claims Plaintiff asserts in this litigation, and the parties agreed that the arbitrator has exclusive authority to resolve all threshold issues of arbitrability.

13

## CONCLUSION

Based on the foregoing, Uber respectfully requests that this Court order Plaintiff to submit to binding, individual arbitration in accordance with the Terms of Use to which she agreed. Further, proceedings before this Court should be stayed until the conclusion of arbitration.

## CERTIFICATE OF CONFERRAL

Counsel for Uber conferred with counsel for Plaintiff pursuant to Local Rule 7.1(a)(3) via electronic mail on August 2, 2024 and telephone call on August 6, 2024, before filing this Motion. Counsel for Plaintiff responded that Plaintiff does not consent to the relief requested by Uber.

Dated: August 16, 2024

Respectfully submitted,
**K&L GATES LLP**

Southeast Financial Center
200 S. Biscayne Boulevard, Suite 3900
Miami, Florida 33131-2399
Telephone: (305) 539-3300
Fax: (305) 358-7095

*/s/ Jonathan B. Morton*
Jonathan B. Morton
Florida Bar No. 956872
Email: jonathan.morton@klgates.com
Alejandra Desiree Gonzalez
Florida Bar No. 1035938
Email: alejandra.gonzalez@klgates.com

*Attorneys for Uber Technologies, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 16th day of August 2024.

*/s/ Jonathan B. Morton*
Jonathan B. Morton

**EISENBAND LAW, P.A.**
Michael L. Eisenband
Florida Bar No. 94235
MEisenband@EisenbandLaw.com
515 E Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Telephone: (954) 732-2792

*Counsel for Plaintiff and the Putative Class*

15